UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| GUILLERMO MORENO LERMA, ) | | |
| Institutional ID No. 1071137, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | | CIVIL ACTION NO. |
| ) | | 5:15-CV-070-BG |
| ROBERT K. STEVENS, Warden I, *et al.*, ) | | ECF |
| ) | | |
| ) | | |
| Defendants. ) | | |

**REPORT AND RECOMMENDATION**

Proceeding *pro se* and *in forma pauperis*, Plaintiff Guillermo Moreno Lerma, an inmate incarcerated by the Texas Department of Criminal Justice (TDCJ), filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. Specifically, Lerma claims that Defendants searched his cell and confiscated his property for purposes of retaliation while he was incarcerated at the John Montford Unit (Montford Unit), and Defendants failed to adequately investigate the grievances he filed. Lerma seeks compensatory, punitive, and injunctive relief.

**I.    Procedural History**

The United States District Court transferred this case to the undersigned United States Magistrate Judge for further proceedings. The undersigned thereafter reviewed the authenticated records from TDCJ and scheduled a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985). However, the undersigned was unable to conduct the *Spears* hearing due to technical difficulties with the televideo equipment. Consequently, the undersigned ordered Lerma to complete a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976). Lerma timely returned the completed questionnaire to the U.S. District Clerk. Lerma has not

consented to the jurisdiction of the United States Magistrate Judge. Pursuant to the order of transfer, the undersigned now enters this report and recommendation and recommends that this action be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.

## II.     Standard of Review

A court must dismiss a complaint filed *in forma pauperis* if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) (2015); *see also* 28 U.S.C. § 1915A(b) (applying to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacking an arguable basis in fact rests upon clearly baseless factual contentions, while a complaint lacking an arguable basis in law rests upon indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). In reaching a determination regarding the viability of the complaint, the court may consider reliable evidence such as the plaintiff's allegations and the authenticated records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991). The court may also consider a plaintiff's responses to a questionnaire, which become part of the plaintiff's pleadings. *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999).

## III.    Allegations in Lerma's Complaint

Lerma alleges that on March 3, 2014, Defendant Mares searched his cell and the locker in his cell at Montford Unit. He complains that there was no need for Mares to search his cell because another officer had searched the cell earlier that day. During the search, Lerma claims that

Defendant Mares scattered his property over his cell and confiscated five magazines, two ink pens, and a pair of headphones. According to authenticated records from TDCJ, the confiscated magazines had another inmate's identification on them that had been scratched out. Lerma claims that Defendant Mares did not provide him with confiscation papers and did not send the confiscated items to his family. Lerma also alleges that Defendant Mares refused to feed him "last chow" in retaliation for his complaining about the cell search. He did receive dinner around 8:30 that evening from another officer.

Lerma also names as defendants Robert K. Stevens, the Warden of Montford Unit; Tyrone Jones, a correctional officer; Denise Stafford, a grievance investigator; and M. Tone, a Region 5 grievance investigator. In his responses to the questionnaire, Lerma stated that he did not have personal contact with Defendants Stafford or Tone, and in his Complaint, he stated that Defendant Stevens had no personal involvement in the actions that form the basis of his Complaint.

### IV.    Confiscation of Property

Together, the Supreme Court cases of *Parratt* and *Hudson* hold that a prison official's negligent or intentional confiscation of a prisoner's property does not constitute an actionable claim under § 1983 if state law provides an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (analyzing a prisoner's claim that prison officials intentionally confiscated and destroyed legal materials); *Parratt v. Taylor*, 451 U.S. 527, 535–55 (1981) (analyzing prisoner's complaint that prison officials negligently confiscated property). Texas provides adequate post-deprivation remedies through a civil action in tort for conversion. *Murphy v. Collins*, 26 F.3d 541, 543–44 (5th Cir. 1994). Thus, a prisoner who brings a claim for confiscation of property in Texas does not have a cognizable § 1983 claim. *Id.*

3

In this case, the *Parratt/Hudson* doctrine bars Lerma's claim for the alleged deprivation of five magazines, two ink pens, and a pair of stereo headphones. *See Estes v. NFN Camargo*, 491 F. App'x 474, 2012 WL 5359498, at *1 (5th Cir. Nov. 1, 2012) (discussing the application of the *Parratt/Hudson* doctrine). Texas state law provides an adequate remedy for the type of random deprivations described by Lerma. *See* Tex. Gov't Code Ann. § 501.007; *Murphy*, 26 F.3d at 543–44. To the extent Lerma asserts that Officer Mares failed to comply with prison procedures by refusing to provide him with a confiscation slip, such failure does not amount to a constitutional violation. *See, e.g.*, *Estes*, 2012 WL 5359498, at *1 (citing *Jackson v. Cain*, 864 F.2d 1235, 1251–52 (5th Cir. 1989)) ("The defendants' alleged failure to adhere to prison procedures for confiscating property does not establish a due process violation.").

What is more, because of the limitations that necessarily come with incarceration, Lerma does not have a strong right to the property that Officer Mares confiscated. *See Allen v. Thomas*, 2005 WL 2076033, at *6 (S.D. Tex. Aug. 26, 2005); *see also Hudson*, 468 U.S. at 526, 528-29 (holding that prisoners do not have a reasonable expectation of privacy in their cells and prison officials may search their cells at any time). Indeed, prison officials may impose reasonable restrictions on the type and amount of personal property that inmates are allowed to possess while incarcerated. *See Sullivan v. Ford*, 609 F.2d 197, 198 (5th Cir. 1980). The authenticated records show that Officer Mares confiscated the magazines because they bore another inmate's name and number which had been marked out and the "free world" black pens were not permitted. In sum, Lerma's claim for confiscation of property lacks an arguable basis in law and should be dismissed as frivolous.

**V.      Retaliation**

Lerma also alleges that Officer Mares retaliated against him by searching his cell and intentionally scattering his property, as well as refusing to feed him "last chow."[1] To state a claim of retaliation, "a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (quoting *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998)). A prisoner has a heavy burden to establish a claim of retaliation; he must do more than make mere conclusory allegations. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995); *see Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Where a prisoner is unable to establish a specific constitutional violation, his claim is not cognizable. *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir. 1999).

Here, Lerma has not alleged facts that meet the four elements to state a claim for retaliation. He has not established a specific constitutional violation; he alleges that Officer Mares had no reason to search his cell on the afternoon of March 3, 2014, because it had already been searched that day, and he was not fed last chow until approximately 8:30 p.m. on March 3 in retaliation for complaining about the search. As already discussed, however, a prisoner does not have an expectation of privacy in his cell and officials may search a cell at any time. *Hudson*, 468 U.S. at 526, 528-29. Moreover,

---

[1] In his Complaint, Lerma alleges that it took him six hours to organize his property and place it back into his locker after Officer Mares searched his cell. He states that due to a "worn-out disk in his lower back," he suffered from "unusual back pain for the next two to three days" after cleaning up his property. The authenticated medical records do not show, however, that Lerma sought medical care for his back pain. Although the court empathizes with Lerma's situation, such a claim does not rise to the level of a constitutional violation. *See Cook v. Bd. of Pardons & Parole*, 2008 WL 4559838, at *2–3 (N.D. Tex. Oct. 9, 2008) (holding that prisoner's claim that a kitchen cook who allegedly threw a "liquid substance" did not amount to a constitutional claim in part because there was no indication the prisoner suffered physical harm); *see also Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006) (holding that a prison official must be aware that a substantial risk of harm exists to constitute deliberate indifference to a serious medical need).

Lerma admitted that he received dinner on March 3 at 8:30 p.m.—just a few hours later than the other inmates received dinner.  What is more, Lerma has not shown that Officer Mares—or any of the other Defendants—searched his cell solely because of a retaliatory motive.  He did not offer evidence that Officer Mares searched his cell *because* he filed a grievance or lawsuit.  Nor did he offer any evidence that his filing of a grievance caused Officer Mares to refuse him last chow in retaliation.  Accordingly, the court finds that Lerma's conclusory allegations of retaliation by Officer Mares are insufficient to establish a constitutional claim for retaliation.

## VI.     Failure to Investigate and Supervisory Liability

Finally, Lerma names as Defendants Warden Robert Stevens; Tyrone Jones, sergeant; Grievance Officer Denise Stafford; and Grievance Investigator M. Tone.  He claims that they failed to adequately investigate his complaints and failed to protect his constitutional rights.  "[A] prisoner has a liberty interest only in 'freedom[s] from restraint ... impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Orellana v. Kyle*, 65 F.3d 29, 31–32 (5th Cir. 1995) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  A prisoner does not have a constitutionally protected interest in having his complaints and grievances resolved to his satisfaction.  *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005).  Therefore, Lerma's claim that Defendants Stevens, Jones, Stafford, and Tone failed to adequately investigate his grievances do not state a constitutional claim and should be dismissed.

Moreover, to the extent Lerma asserts a claim against Defendants Stevens, Jones, Stafford, and Tone based on supervisory liability, that claim should also be dismissed.  In §1983 suits, liability of government officials for the unconstitutional conduct of their subordinates may not rest solely upon a theory of *respondeat superior* or vicarious liability.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676

(2009) (citing *Robertson v. Sichel*, 127 U.S. 507, 515-16 (1888)); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."). Thus, supervisory officials are not subject to vicarious liability under § 1983 for the acts or omissions of their subordinates. *See Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). Absent direct personal participation in the alleged constitutional violation, a plaintiff must prove that each individual defendant either implemented an unconstitutional policy that directly resulted in injury to the plaintiff or failed to properly train a subordinate employee. *See Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011); *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987).

At the outset, the court notes that it has already found that Lerma has failed to establish a constitutional violation. He cannot establish a claim for supervisory liability without an underlying constitutional violation. *See Breaux v. City of Garland*, 205 F.3d 150, 151 (5th Cir. 2000) ("[T]he fact that Plaintiff's First Amendment rights were not actually infringed exonerates Holified from supervisory liability.").

But even if he had established an underlying constitutional claim for confiscation of property, retaliation, or failure to investigate, he has failed to state a claim for supervisory liability. Lerma does not allege that Defendants Stevens, Jones, Stafford, or Tone were personally involved in the alleged constitutional violation. Rather, he alleges that they are liable under §1983 in their capacity as supervisors for failing to adequately investigate his complaints and correct reckless action. Allegations of such a nature do not give rise to supervisory liability. Lerma did not present facts in his Complaint or in his responses to the questionnaire to show that Defendants Stevens, Jones, Stafford, and Tone implemented a constitutionally deficient policy or failed to properly train

subordinate employees and such omissions resulted in injury to Lerma. *See Porter*, 659 F.3d at 446; *Thompkins*, 828 F.2d at 303–04.  Nor did he otherwise offer evidence that they affirmatively participated in the alleged constitutional violations.  Accordingly, the court finds that Lerma has failed to state a non-frivolous claim against Defendants Stevens, Jones Stafford, and Tone—to the extent he asserts a supervisory liability claim against them.

## VII.   Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court dismiss Lerma's Complaint and all claims therein with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A and deny any pending motions as moot.

## VIII.   Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1) (2015); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:   September 29, 2015.

_____
NANCY M. KOENIG
United States Magistrate Judge